UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BLANCHE JACKSON O/B/O,
"BE", an infant

                  Plaintiff,

     v.

NANCY A. BERRYHILL,[1] Commissioner of
Social Security,

                  Defendant.
_____

REPORT
and
RECOMMENDATION

16-CV-00099V(F)

APPEARANCES:        LAW OFFICES OF DENNIS A. CLARY
                          DENNIS A. CLARY, of Counsel
                          Attorney for Plaintiff
                          755 Center Street
                          P.O. Box 1044
                          Lewiston, New York 14092

                          JAMES P. KENNEDY
                          ACTING UNITED STATES ATTORNEY
                          Attorney for Defendant
                          ANDREA LECHLEITNER
                          Assistant United States Attorney, of Counsel
                          Federal Centre
                          138 Delaware Avenue
                          Buffalo, New York 14202, and

                          STEPHEN P. CONTE
                          Regional Counsel - Region II
                          United States Social Security Administration
                          Office of the General Counsel, of Counsel
                          26 Federal Plaza, Room 3904
                          New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable Lawrence J. Vilardo on January 17, 2017. (Dkt. No. 15). The matter is presently before the court on Plaintiff's motion for judgment on the pleadings filed on January 11, 2017 (Dkt. No. 13), and Defendant's motion for judgment on the pleadings, filed on January 17, 2017. (Dkt. No. 16).

## BACKGROUND

Plaintiff Blanche Jackson ("Plaintiff" or "Jackson") on behalf of her minor custodial great niece ("BE"), seeks review of Defendant's decision dated September 19, 2014 (R. 14-26),[2] wherein the Administrative Law Judge ("ALJ") determined that BE was not disabled under section 1614(a)(3)(c) of the Act.

Plaintiff protectively filed an application for Supplemental Security Income Benefits ("SSI") under Title XVI of the Act on August 29, 2012 (R. 108), alleging that B.E. became disabled on March 23, 2003. (R. 108). In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had the severe impairments of borderline intellectual functioning. (R. 17). Defendant further determined that Plaintiff's borderline intellectual functioning did not meet or medically equal a listed impairment or combination of impairments within the Act's definition of impairment (R. 17), and found Plaintiff not disabled, as defined in the Act, at any time from the alleged onset date of

---

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the court's review.

March 23, 2003 (R. 26), through the date of the Administrative Law Judge's decision on September 19, 2014. *Id.*

## **PROCEDURAL HISTORY**

On August 8, 2012, Plaintiff filed an application for supplemental insurance benefits under Title XVI of the Act. (R.108-13). Plaintiff's application alleging disability based on borderline intellectual functioning was initially denied by Defendant on November 26, 2012 (R. 57 ), and, pursuant to Plaintiff's request filed on July 22, 2014 (R. 30), a hearing was held before ALJ Grenville W. Harrop, Jr. ("Judge Harrop" or "the ALJ") in Buffalo, New York. (R. 28-62). Plaintiff BE and her legal guardian great aunt, represented by Kevin Canali, Esq. ("Canali"), appeared and testified at the hearing. *Id*. The ALJ's decision denying the claim was rendered on September 19, 2014. (R. 11-23). On October 3, 2014, Plaintiff requested review of the hearing decision by the Appeals Council. (R. 7). The ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on December 7, 2015. (R. 1-4). This action followed on January 14, 2016, with Plaintiff alleging that the ALJ erred by failing to find Plaintiff disabled. (Doc. No. 1).

On January 11, 2017, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a supporting memorandum of law (Doc. No. 10) ("Plaintiff's Memorandum"). On January 17, 2017, Defendant filed a motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 16) ("Defendant's Memorandum"). Oral argument was deemed unnecessary.

Based on the following, Defendant's motion should be GRANTED; Plaintiff's motion for judgment on the pleadings should be DENIED for the reasons stated in this Report and Recommendation.

## **FACTS[3]**

Plaintiff BE was born on March 23, 2003. (R. 108). Plaintiff was nine years old on August 29, 2012, the date that Plaintiff's disability application was filed, and is therefore considered a school-aged child for disability review purposes. 20 C.F.R. § 416.926a(g)(2)(iv)(v).

Relative to the period of disability review in this case, on November 28, 2011, School Psychologist Ann Marie Martillota ("Psychologist Martillota"), administered the Weschler Intelligence Scale for Children-Fourth Edition ("WISC-IV") test[4] to Plaintiff and noted that Plaintiff's full-scale I.Q. measured 69, a ranking within the second percentile nationally of children the same age as Plaintiff, that Plaintiff's verbal comprehension, and conceptualization ranked in the fourth percentile nationally, with an area of relative strength on the comprehension portion of the test based on Plaintiff's understanding of general principles and situation, that Plaintiff ranked in the third percentile nationally in perceptual reasoning,[5] in the twenty-first percentile nationally in processing speed,[6] in the first percentile nationally in working memory,[7] ranked in the sixth percentile

---

[3] Taken from the pleadings and the administrative record.
[4] WISC-IV Comprehension measures a child's verbal reasoning and conceptualization, verbal comprehension and expression, and the child's ability to evaluate and use past experience and demonstrate practical information.
[5] WISC-IV Perceptual reasoning measures a child's ability to visually perceive and organize information, nonverbal concept formation, visual-motor integration, and abstract categorical reasoning.
[6] WISC-IV Processing speed measures a child's ability for short-term visual memory, speed of mental and grapho-motor processing and attention and concentration.
[7] WISC-IV Working memory measures a child's short-term auditory memory, attention, manipulation, processing, and concentration.

nationally in overall reading, and in the fourth percentile nationally overall in math.  (R. 292-93).  Psychologist Martillota recommended that Plaintiff continue to be classified with multiple disabilities and receive accommodation with frequent repetition, oral testing, and additional explanation of directions during tests, additional time allotment, and use of manipulatives.  (R. 292-93).  Plaintiff's second, third and fourth grade report cards showed Plaintiff with excellent and satisfactory grades in all areas.  (R. 250-55).

On September 24, 2013, Plaintiff's special education teacher Michelle Capstick ("Capstick"), completed a Teacher Questionnaire on behalf of the Social Security Administration, and rated Plaintiff, then 10 years old, with a reading level of grade two, math level at grade three, and written ability at grade two (R. 219), serious problems reading and comprehending written material, comprehending and completing math problems (R. 220), and re-focusing when necessary (R. 221).  Capstick further evaluated Plaintiff with no problem playing cooperatively with other children (R. 222), managing and keeping friends, obvious problems in using adequate vocabulary and grammar to express thoughts and ideas in general everyday conversation (R. 222), carrying our single-step instructions, a slight problem sustaining attention during sports and play activities, carrying our multi-step instructions, waiting to take turns, changing from one activity to another without disruption and completing homework assignments, obvious problems paying attention when spoken to directly, focusing long enough to finish assigned tasks and activities, completing work accurately without carless mistakes, working without distracting others, and working at a reasonable pace and finishing on time.  (R. 221).

5

On November 12, 2014, Rachel Domaracki ("Domaracki") and Jennifer Banasher ("Banasher"), Plaintiff's fourth grade teachers, completed a Teacher Questionnaire on Plaintiff on behalf of the New York State Office of Temporary and Disability Assistance, and rated Plaintiff with no problems paying attention when spoken to directly, sustaining attention during sports and play activities, refocusing when necessary, waiting to take turns, and changing from one activity to another, slight problems focusing long enough to finish assigned activities or tasks, organizing school materials and working without distracting other, obvious problems carrying out simple one-step instructions, completing homework assignments and working at a reasonable pace, and serious problems carrying out multi-step instructions and completing work without careless mistakes. (R. 157). Domoracki and Banasher opined that Plaintiff needed help understanding what was being asked of her and that Plaintiff was not able to retain information from day-to-day. *Id.*

## DISCUSSION

**1. Disability Determination Under the Social Security Act**

An individual under the age of 18 is disabled and eligible for benefits when he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or is expected to last for a period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). A three-step review process is used to evaluate whether a child meets the statutory definition of disability. 20 C.F.R. § 416.924, *Myers ex rel. C.N. v. Astrue*, 993 F. Supp.2d 156, 160 (W.D.N.Y. 2012). Similar to the disability requirements

for adults, a child is entitled to disability insurance benefits in instances where the child has not engaged in substantial gainful activity, provides substantial evidence to establish an impairment that is severe, *i.e.*, causes more than a minimal functional limitation in accordance with 20 C.F.R. § 416.924(c), and meets or equals a listed impairment set forth under 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 (the "Listings"). Equivalence to a listing may also be met by establishing a lack of medical or functional ability, *i.e.,* "functionality."   20 C.F.R. § 416.924(d).  Evaluation of functionality is informed by the claimant's ability to function in six main areas or "domains," that include the areas of acquiring and using information; attending and completing tasks; interacting and relating to others; moving about and manipulating objects; caring for oneself, and health and physical well-being.   20 C.F.R. § 416.926a(b)(1) ("§ 416.926a(b)(1)").  A finding of disability is warranted under  § 416.926a(b)(1) in instances where substantial evidence establishes that the claimant has a "marked" limitation in any two listed domains, 20 C.F.R. 416.926a(a), and arises when several activities or functions are impaired, or when only one is impaired, as long as the degree of limitation is such that it seriously interferes with the claimant's ability to function independently, appropriately, effectively, and on a sustained basis based on the individual's age-based expectations. 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 112.00(C).  Functional equivalence may also be established by providing substantial evidence that supports that a claimant's impairment results in an "extreme" limitation to the claimant's ability to function within a single area of domain.  *Id.*  Extreme limitations "interfere[ ] very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).  As Plaintiff in this case alleges limitation to only one functional

domain, *i.e.*, the ability to attend to and complete tasks, Plaintiff must establish an extreme limitation within that domain.

## Standard and Scope of Judicial Review

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[8] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## B.   Substantial Gainful Activity

The first inquiry is whether the applicant engaged in substantial gainful activity. 20 C.F.R. § 404924(b). In this case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 29, 2012, the Plaintiff's application date. (R. 17). Plaintiff does not contest this determination.

---

[8] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

## C.   Severe Physical or Mental Impairment

The second step of the analysis requires a determination whether a disability claimant has a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 416.924(c). If no severe impairment is found, the claimant is deemed not disabled and the inquiry ends. *Id.*

In this case, the ALJ determined Plaintiff had the severe impairment of borderline intellectual functioning. (R. 17). Plaintiff does not contest this finding

## D.   Listing of Impairments, Appendix 1

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 ("The Listing of Impairments"). If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled. 20 C.F.R. §416.924(d). *Myers*, 993 F. Supp.2d 156 at 161(if a child's impairment meets or equals a listed impairment the child is considered disabled). In this case, the ALJ found Plaintiff's impairments did not medically meet or equal a listed impairment. (R. 20). For purposes here, Plaintiff was nine years old on August 8, 2012, the date that Plaintiff filed her application for disability benefits, and is therefore considered a school-aged child under 20 C.F.R. § 416.926a(g)(2).

In order to meet the criteria for disability under 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05D ("§ 112.05D") (Intellectual Disability), a child must have a valid[9] verbal,

---

[9] The undersigned acknowledges that the ALJ should have required an updated IQ test in accordance with 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(D)(10) ("IQ test results obtained between ages 7 and 16 should be considered current for [four] years when the tested IQ is less than 40, and for [two] years when the IQ is 40 or above."). The ALJ's error in not requesting an updated IQ test in this case should be

9

performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.  Children age three to attainment of age 18 must have an intellectual disability that also results in

> b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
> c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or
> d. Marked difficulties in maintaining concentration, persistence or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.02(b)(c)(d) ("§ 112.02").

In this case, the ALJ determined that the Plaintiff's individual IQ scores on Plaintiff's Weschsler Intelligence Scale for Children ("WISC-IV") tests completed on November 17, 2014 and November 21, 2014,  were inconsistent with Plaintiff's full-scale IQ of 69 and that Plaintiff was therefore unable to meet the required IQ threshold for disability under § 112.05D.  (R. 19).

**Functional equivalence**

As previously discussed, Discussion, *supra*, at 7-8, functional equivalence may be used to establish disability based on a claimant's ability to function within six domains.  In this case, the ALJ found that Plaintiff had a marked limitation in Plaintiff's ability to acquiring and using information (R. 15-16), a less than marked limitation to attending to and completing tasks (R. 22) and interacting and relating to others (R. 23),

---

considered harmless however, as substantial evidence supports the ALJ's finding that Plaintiff did not have a marked limitation to Plaintiff's ability to attend to and complete tasks and was therefore not disabled.

10

and no limitations to Plaintiff's ability to move about and manipulate objects (R. 23-24), care for herself (24-25), and Plaintiff's health and physical well-being.  (R. 25-26).  As Plaintiff's allegation is limited to one area of domain (Plaintiff's ability to attend to and complete tasks) discussion is limited to that domain.

   Plaintiff contends that the ALJ improperly evaluated Plaintiff's ability to attend to and complete tasks.  Plaintiff's Memorandum at 3-4.  In particular, Plaintiff contends that the ALJ's finding that Plaintiff had a marked limitation to acquire and use information supports that Plaintiff has a marked limitation to attend to and complete tasks, and that the ALJ's reliance on Plaintiff's ability to carry out single-step instructions, organize her materials and show progress in school, was insufficient to support the ALJ's finding that Plaintiff had a "less than marked" limitation to Plaintiff's ability to attend to and complete tasks.  *Id*.  Plaintiff further contends that Plaintiff's necessity to have test questions repeated to her orally and receive extra time to complete tasks supports that Plaintiff had a marked limitation in the area of attending to and completing tasks.  Plaintiff's Memorandum at 4.  Defendant maintains that dissimilar evidence is necessary to support a marked limitation in the domains of acquiring and using information and attending to and completing tasks.  Defendant's Memorandum at 8-14.

**Ability to attend to and complete tasks**

   The ability to attend to and complete tasks includes an evaluation of a claimant's ability to focus and maintain attention, and begin, carry through, and finish activities, including the pace at which such activities are performed, and the ease of alternating between activities.  20 C.F.R. § 416.926a(h).

Pre-school aged children (ages three through six) should be able to pay attention when spoken to directly, sustain attention during play and learning activities, concentrate on activities like putting puzzles together or completing art projects, get clothes together and dress and feed oneself, put toys away, and be able to wait for a turn when changing activities.  20 C.F.R. § 416.926a(h)(2)(iii).  Plaintiff submits no evidence to support that Plaintiff's ability to attend to and complete tasks was compromised during Plaintiff's pre-school years and the undersigned therefore does not proceed to review Plaintiff's disability during that time.  *See Darcy v. Lippman*, 2008 WL 629999, at *8 (S.D.N.Y. Mar. 10, 2008) (no court review where claimant failed to allege and provide evidence to support impairment).

School-aged children (ages six through 12) should be able to focus attention in a variety of situations, remember and organize school materials, complete classroom and homework assignments, concentrate on details and not make careless mistakes in their work, change activities and routine without distracting others, stay on task when appropriate, participate in group sports, read alone, complete family chores, and complete transitive tasks like getting ready for the bus without extra reminders and accommodation.  20 C.F.R. § 416.926a(h)(2)(iv).

A child has a "marked limitation" in a domain when the impairment interferes seriously with the ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2)(i).  A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities.

A "marked limitation" is defined as

1. A limitation that is "more than moderate," but less than extreme."
2. The equivalent of functioning that would be expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
3. A valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and her day-to-day functioning in domain-related activities is consistent with that score.
4. For the domain of health and physical well-being, frequent episodes of illnesses because of the impairment(s) or frequent exacerbations of the impairment(s) that result in significant, documented symptoms or signs that occur; (a) on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more; (b) more often than 3 times a year or once every 4 months, but not lasting for 2 weeks; or (c) less often than an average of 3 times a year or once every 4 months but lasting longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

20 C.F.R. § 416.926a(c)(2)

In this case, substantial evidence supports the ALJ's finding that Plaintiff does not have a marked limitation to Plaintiff's ability to attend to and complete tasks during Plaintiff's school-aged years.

In particular, on November 12, 2012, Plaintiff's teachers Domaracki and Banasher evaluated Plaintiff with no problems paying attention when spoken to directly, sustaining attention during pay and sports, refocusing on tasks when necessary, changing from one activity to another without being disruptive, waiting to take turns, and with slight problems with focusing long enough to finish a task on time, organizing school materials and working without distracting oneself or others, obvious problems carrying out single-step instructions, and serious problems carrying out multi-step instructions and completing work without careless mistakes.  (R. 157).

An Individualized Education Program "(IEP)" completed by the Medina Central School District where Plaintiff was enrolled on March 20, 2013 noted that Plaintiff was an organized student (R. 241), enjoyed playing peer sports and needed extra time to complete tasks.  (R. 240-42).

A questionnaire completed by Capstick on September 24, 2013, noted that Plaintiff had no problems carrying out single-step instructions and organizing her school materials, slight problems sustaining attention during play and sports activities, carrying out multi-step instructions, waiting to take turns, changing from one activity to another without being disruptive, and completing homework assignments, obvious problems with paying attention when spoken to, focusing long enough to complete assigned activities or tasks, completing work accurately without careless mistakes, working without distracting oneself or others, and at a reasonable pace to finish in a timely fashion.  (R. 221).  Capstick noted that Plaintiff's only serious problem was refocusing on tasks when necessary.  *Id.*  The ALJ's finding that Plaintiff does not have a marked limitation to Plaintiff's ability to attend to and complete tasks is therefore supported by substantial evidence.  *See Gomes v. Astrue*, 633 F.Supp.2d 171, 186 (2d Cir. 2009) citing *Parker v. Commissioner of Social Security*, 2008 WL 4553070, at *8 (N.D.N.Y. Oct. 7, 2008) (less than a marked limitation to attend to and complete tasks despite ADHD diagnosis); *Watson v. Astrue*, 2008 WL 3200240, at *3 (W.D.N.Y. Aug. 5, 2008) (less than a marked limitation to attend to and complete tasks despite difficulty focusing and distractibility when claimant is able to be redirected to tasks); *Morgan v. Barnhart*, 2005 WL 925594, at *14 (S.D.N.Y. Apr. 21, 2005) (less than a marked limitation to attend to and complete tasks despite ADHD diagnosis and being "easily distracted");

*Richardson v. Barnhart,* 338 F.Supp.2d 749, 756, 757-58 (S.D. Tex. 2004) (less than a marked limitation to attend to and complete tasks despite diagnosis of ADHD and special education in select classes); *Duran v. Barnhart*, 2003 WL 103003, at *11 (S.D.N.Y. Jan. 13, 2003 (less than a marked limitation to attend to and complete task despite special education and need for "'constant reminders to stay focused' and . . . 'needing to keep [child] on task'"). Plaintiff's motion on this issue should therefore be DENIED.

## **CONCLUSION**

Based on the foregoing, Defendant's motion should be GRANTED; Plaintiff's motion should be DENIED. The Clerk of the Court should be instructed to close the file.

Respectfully submitted,

*/s/ Leslie G. Foschio*
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   March 19, 2018
         Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

               */s/ Leslie G. Foschio*

               LESLIE G. FOSCHIO
               UNITED STATES MAGISTRATE JUDGE

DATED:  March 19, 2018
      Buffalo, New York